EL PUEBLO DE PUERTO RICO, peticionario, *v.* ASHLEY M. TORRES FELICIANO, recurrida.

*Número:* CC-2016-0055          *Resuelto:* 12 de julio de 2016

*Margarita Mercado Echegaray*, procuradora general, y *Daphne N. Cordero Guilloty*, procuradora general auxiliar, abogadas de la parte peticionaria; *Lilliannette Cortés Soto* y *Fabiana Tapia Pimentel*, abogadas de la parte recurrida.

## SENTENCIA

El 22 de enero de 2016 el Estado Libre Asociado de Puerto Rico presentó un recurso de *certiorari* ante este Tribunal mediante el cual solicitó la revisión de la sentencia emitida por el Tribunal de Apelaciones el 23 de diciembre de 2015 en el caso *El Pueblo de Puerto Rico v. Ashley Marie Torres Feliciano*, KLCE201400162. En ésta, el foro apelativo intermedio revocó la determinación del Tribunal de Primera Instancia y ordenó la celebración de un nuevo juicio. Luego de considerar el recurso peticionado, los Jueces y las Juezas de este Tribunal se encuentran *igualmente divididos* en cuanto a su expedición. Por lo tanto, y conforme a la Regla 4(a) del Reglamento de este Tribunal Supremo,[1] *se expide el referido recurso y se confirma el dictamen recurrido.*

---

[1] 4 LPRA Ap. XXI-B.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado Señor Rivera García emitió una Opinión disidente, a la cual se unieron la Jueza Asociada Señora Pabón Charneco y el Juez Asociado Señor Feliberti Cintrón. La Jueza Presidenta Oronoz Rodríguez disintió sin opinión escrita.

(*Fdo.*) Sonnya Isabel Ramos Zeno
*Secretaria del Tribunal Supremo Interina*

— O —

Opinión disidente emitida por el Juez Asociado Señor Rivera García, a la cual se une la Jueza Asociada Señora Pabón Charneco y el Juez Asociado Señor Feliberti Cintrón.

En lo que parece ser una práctica judicial preocupante y en crecimiento, nuevamente tenemos ante nuestra consideración un caso en el que el Tribunal de Apelaciones revoca un veredicto de un Jurado y ordena la celebración de un nuevo juicio. Lo que es peor, en esta ocasión se trata de la revocación de un veredicto *unánime* —atípico en nuestra jurisdicción— en un caso de asesinato en primer grado y cuya revocación *no* encuentra sustento alguno en el expediente. Revocar a nivel apelativo la apreciación de doce personas por el simple hecho de que se catalogue como prueba exculpatoria un Informe de Análisis de Escena del cual no surge el nombre de la sospechosa —y eventual convicta— no tan solo representa un craso error en derecho, sino que demuestra un claro desconocimiento de materias básicas en cuanto al manejo de escenas criminales. Ello, de por sí, debió ser suficiente para mover a este Tribunal a expedir el recurso y evaluar con detenimiento los méritos del caso. Hoy, lamentablemente, el curso de acción es otro, ya que los miembros de este Foro nos encontramos igualmente divididos. Procede entonces expedir el caso de epígrafe y confirmar el dictamen *patentemente erróneo* emi-

tido por el Tribunal de Apelaciones. Ante ello, no me resta más que disentir.

Explico a continuación en detalle mi postura sobre el caso y expongo las razones por las cuales debió expedirse el recurso de *certiorari* presentado por la Procuradora General con el objetivo de revocar el dictamen recurrido. Como explicaré, los planteamientos argumentados por la defensa no brindan espacio alguno para concluir en el presente caso que hay evidencia nueva que pueda variar el veredicto y mucho menos brinda espacio para concluir que estamos ante evidencia exculpatoria.

## I

Por hechos ocurridos el 21 de febrero de 2009, un Jurado encontró culpable de forma unánime a Ashley M. Torres Feliciano (señora Torres Feliciano) por los delitos de asesinato (Art. 106 del Código Penal de 2004)[1] y portación y uso de armas blancas (Art. 5.05 de la Ley de Armas de Puerto Rico).[2] La prueba de cargo consistió en el testimonio de los testigos siguientes: el agente Concepción Santiago, el señor Abdón López, el señor Francisco Colón, la señora Zulayka Rivera, el señor Luis Rodríguez Cruz, el señor Abimael Figueroa, la señora Lissette Colón, la señora Lesly Figueroa Feliciano, la señora Giselle Figueroa Feliciano, el patólogo Carlos Chávez y la madre de la recurrida, la señora Lucrecia Feliciano. El Ministerio Público, aunque anunció como testigos de cargo a los agentes René Rodríguez (agente Rodríguez) y Brunilda Borrero (agente Borrero), decidió no utilizarlos durante el juicio. Siendo así, surge de los autos del caso que el tribunal decretó un receso en la Sala para que el abogado de defensa exami-

---

[1] Ley Núm. 149-2004, según enmendada, conocida como Código Penal del Estado Libre Asociado de Puerto Rico, 33 LPRA sec. 4734.

[2] Art. 5.05 de la Ley Núm. 404-2000, según enmendada, conocida como Ley de Armas de Puerto Rico, 25 LPRA sec. 458d.

nara a ambos testigos. Luego del receso, la defensa indicó al Tribunal que tuvo oportunidad de entrevistar a los testigos y que no le interesaba interrogarlos. Desfilada la prueba, el Jurado emitió en forma unánime un veredicto de culpabilidad por los delitos según imputados. En consecuencia, el Tribunal de Primera Instancia sentenció a la recurrida a una pena de reclusión de ciento once años de cárcel.

Inconforme con la determinación del foro primario, la convicta solicitó la reconsideración, pero fue denegada. Oportunamente, la señora Torres Feliciano presentó una solicitud de nuevo juicio, la cual fue denegada también. Aún en desacuerdo, la recurrida presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. En este alegó que se violaron sus derechos constitucionales a tener un debido proceso de ley y a un juicio justo al omitirse la entrega de prueba exculpatoria. Específicamente, adujo que la defensa no tuvo la oportunidad de examinar el Informe de Análisis Escena preparado por el agente investigador Rodríguez. Alegó que tuvo acceso por primera vez a dicho Informe durante la celebración de la Vista Evidenciaria, en la que el agente admitió que no lo había entregado.[8] Sostuvo que el Informe constituye prueba exculpatoria, ya que no menciona a la recurrida como sospechosa o participante de conducta delictiva alguna.

Evaluados los argumentos de las partes, el 23 de diciembre de 2015 el foro apelativo intermedio emitió una Sentencia en la que revocó el veredicto condenatorio unánime y ordenó la celebración de un nuevo juicio. Esto, porque entendió que el Tribunal de Primera Instancia descartó los testimonios de los agentes Rodríguez y Borrero así como el testimonio de la Dra. Sylvette Lugo (doctora Lugo). En esencia, el planteamiento de la señora Torres Feliciano es que de los testimonios de los testigos no surge que la recurrida fuera considerada sospechosa, sino una

---

[8] Apéndice de la Petición de *certiorari*, págs. 15–17.

perjudicada. De esta manera, determinó que procedía celebrarse un nuevo juicio.

En desacuerdo con este dictamen, el Estado recurre ante nos mediante un recurso de *certiorari*. En este adujo los señalamientos de error siguientes:

> Erró el Tribunal de Apelaciones al expedir el auto de *certiorari* solicitado por la señora Ashley Torres Feliciano y ordenar la celebración de un nuevo juicio.
> Erró el Tribunal de Apelaciones al concluir que las dos hojas que se anejaron al informe médico preparado por la Dra. Sylvette Lugo y las notas de la agente Brunilda Borrero sobre su intervención en este caso, constituyen evidencia nueva y creíble que produciría un resultado diferente.
> Erró el Tribunal de Apelaciones al concluir que el Informe de Análisis de Escena es evidencia exculpatoria que fue suprimida por el Ministerio Fiscal y que, de haber estado disponible al momento del juicio, hubiera arrojado una luz diferente en el juicio al punto de socavar la confianza en su resultado. Petición de *certiorari*, pág. 7.

En su escrito, la Procuradora General sostuvo que el Tribunal de Apelaciones incidió al revocar la sentencia condenatoria emitida por el foro de instancia a base de una aplicación incorrecta del caso *Pueblo v. Velázquez Colón*, 174 DPR 304 (2008), sin tomar en cuenta la totalidad de la prueba presentada durante el juicio. Asimismo, presentó un escrito titulado Memorando de Oposición a la Expedición del Auto de Certiorari, en el cual, en esencia, repitió los mismos argumentos esbozados ante los foros recurridos.

## II

Las Reglas 188 y 192 de Procedimiento Criminal regulan la concesión de un nuevo juicio bajo el supuesto del descubrimiento de nueva prueba.[4] El factor determinante en cuanto a la aplicación de una u otra regla radica en el momento cuando se descubre la prueba nueva. La Regla 188

---

(4) 34 LPRA Ap. II.

regula la concesión de un nuevo juicio antes de que se dicte sentencia y la Regla 192 después de dictarse la sentencia.

En *Pueblo v. Marcano Parrilla*, 168 DPR 721, 738 (2006), establecimos los requisitos que el promovente debe cumplir para que proceda su moción de nuevo juicio fundada en el descubrimiento de prueba nueva: (1) que la prueba no pudo descubrirse antes del juicio, a pesar de haber mediado una diligencia razonable; (2) que la nueva prueba es pertinente a la controversia y no meramente acumulativa o de impugnación; (3) que tal prueba es creíble, y (4) que su presentación probablemente produzca un resultado distinto.[5] Al ponderar la prueba nueva, el tribunal deberá evaluarla junto con la prueba presentada en el juicio original de la forma más favorable al fallo o veredicto de culpabilidad que se impugna.[6]

En consecuencia, para satisfacer el *quantum* de prueba, se requiere que junto con la prueba presentada en el juicio original, la nueva prueba sea de tal magnitud que, de haber sido presentada en el juicio, hubiera creado duda razonable en el ánimo del juzgador en cuanto a la culpabilidad del convicto.[7] Conforme a lo anterior, no se puede conceder un nuevo juicio si la prueba nueva es increíble y meramente acumulativa, ya que probablemente no cambiaría el resultado del juicio al haberse "presentado evidencia de naturaleza y valor probatorio similar".[8]

Como parte de la garantía constitucional que tiene todo acusado a preparar adecuadamente su defensa, se reconoce como derecho fundamental el derecho a obtener, mediante descubrimiento de prueba, aquella que pueda favorecerle. Por esta razón, se ha resuelto que el derecho al descubrimiento de prueba es consustancial con el derecho

---

[5] *Pueblo v. Velázquez Colón*, 174 DPR 304, 327 (2008); *Pueblo v. Marcano Parrilla*, 168 DPR 721, 738 (2006).

[6] *Pueblo v. Marcano Parrilla*, supra, págs. 739–740.

[7] Véase *Pueblo v. Velázquez Colón*, supra, pág. 327, citando a *Pueblo v. Marcano Parrilla*, supra, pág. 740.

[8] *Pueblo v. Rodríguez*, 193 DPR 987, 1000 (2015).

de todo acusado a defenderse en un proceso criminal en su contra. Es por ello que el Ministerio Público está obligado constitucionalmente a descubrir, oportunamente, toda prueba favorable que esté en manos del Gobierno, entre ella la prueba exculpatoria que tenga.[9] La entrega inoportuna constituye una supresión si el acusado no tiene oportunidad de utilizarla efectivamente. Así, en *Pueblo v. Velázquez Colón*, supra, establecimos que la omisión o supresión de evidencia que incide en los asuntos de inocencia o culpabilidad lesiona el debido proceso de ley de un acusado, por lo que procede revocar la convicción y ordenar la celebración de un nuevo juicio.[10]

Ahora bien, es importante delinear lo que es la prueba exculpatoria. A tales efectos, hemos señalado que la prueba exculpatoria es "toda aquella que resulta favorable al acusado y que posee relevancia en cuanto a los aspectos de culpabilidad y castigo, irrespectivamente de la buena o mala fe exhibida por el Ministerio Fiscal". (Énfasis suprimido).[11] La relevancia de la prueba que se presente estará condicionada a la impresión que tenga el foro recurrido sobre ella en cuanto al hecho de que existe una razonable probabilidad de que ésta habría alterado el veredicto o el castigo impuesto;[12] es decir, si para el juzgador la prueba constituye una prueba exculpatoria suprimida que con una razonable probabilidad habría alterado el veredicto o el castigo impuesto si se hubiese presentado ante él. De ser ese el caso, al evaluar la moción de nuevo juicio no

---

[9] En este sentido, la obligación del Estado de presentar evidencia exculpatoria o de impugnación de la prueba principal de cargo, no parte del derecho estatutario a descubrir prueba favorable, sino del derecho constitucional al debido proceso de ley y del derecho a enfrentar la prueba adversa.

[10] Íd.

[11] *Pueblo v. Echevarría Rodríguez I*, 128 DPR 299, 333 (1991), citando a *Brady v. Maryland*, 373 US 83, 87–88 (1963). Véanse: *Pueblo v. Hernández Santana*, 138 DPR 577 (1995); *Moore v. Illinois*, 408 US 786, 794–795 (1972).

[12] *Pueblo v. Echevarría Rodríguez I*, supra, pág. 333, citando a *United States v. Bagley*, 473 US 667, 674–675 (1985), a *United States v. Agurs*, 427 US 97, 104 (1976), a *U.S. v. Andersson*, 813 F.2d 1450, 1458–1459 (9no Cir. 1987), y a *United States v. Polizzi*, 801 F.2d 1543, 1553 (9no Cir. 1986).

se considerarán los requisitos estatutarios y jurisprudenciales que aplican a las mociones ordinarias de un nuevo juicio. Ello, puesto que el derecho a un debido proceso de ley, el derecho a obtener evidencia favorable y el derecho a enfrentar la prueba del Estado son de mayor jerarquía y tienen una mayor protección con relación a las Reglas de Procedimiento Criminal.[13] Si la prueba entregada inoportunamente es impugnatoria, el acusado debe demostrar que no tuvo la oportunidad de contrainterrogar al testigo en cuanto al hecho que estableció la prueba que se le entregó tardíamente.[14] Cabe resaltar que el estándar de pertinencia se cumple cuando el acusado demuestra que la evidencia suprimida puede razonablemente arrojar una luz diferente sobre el juicio, al punto de socavar la confianza en el resultado.[15]

## III

Ciertamente, el presente caso requiere determinar si la alegada prueba nueva, en efecto, es prueba exculpatoria que incide en aspectos de culpabilidad o inocencia y si tal prueba hubiera producido un resultado distinto, si al menos hubiese socavado la confianza en el resultado o si, por el contrario, se trata de prueba acumulativa o de impugnación que pudo haberse descubierto mediando una diligencia razonable. Como veremos y conforme las expresiones transcritas en la Sentencia del Tribunal de Apelaciones, no cabe duda de que la evidencia "suprimida" por el Estado no constituye "evidencia exculpatoria", porque si bien es cierto que no la involucra directamente con el acto delictivo, no es menos cierto que no habría alterado el veredicto o el castigo impuesto si se hubiese presentado al juzgador de los hechos. En otras palabras, no es una prueba de tal

---

[13] *Pueblo v. Velázquez Colón*, supra, pág. 329.

[14] Íd.

[15] Íd.; *Brady v. Maryland*, supra.

magnitud que hubiese creado la duda razonable en el ánimo del juzgador en cuanto a su no culpabilidad por los hechos imputados. Veamos.

La alegada prueba exculpatoria presentada por la señora Torres Feliciano consistió en la prueba documental siguiente: las notas de la agente Brunilda Borrero, el Informe de Análisis de Escena suscrito por el agente Rodríguez, dos hojas del expediente médico del CDT preparadas por la doctora Lugo y el testimonio de su entonces pareja y padre de su hija, el convicto y autor principal del crimen, el señor Quirindongo. La recurrida alegó que de cada uno de los informes surge que la víctima señaló únicamente a este último como su agresor. Adujo que ninguna de las personas entrevistadas la noche de los hechos —incluso la víctima y su agresor— involucró a la señora Torres Feliciano como partícipe o coautora de los hechos ocurridos el 21 de febrero de 2009. Sostuvo que como la prueba no la vincula a los actos delictivos, ello demuestra que el señor Quirindongo había actuado solo. Concluyó que la referida prueba documental es evidencia exculpatoria, ya que fue una prueba suprimida por el Estado que nunca se le entregó a la defensa.

No procede el reclamo de la recurrida a los efectos de que dicha prueba constituye prueba exculpatoria. Luego de evaluar detenidamente el expediente, examinar la transcripción de los interrogatorios efectuados a los agentes Borrero y Rodríguez y a la doctora Lugo, y escuchar la regrabación del juicio original, es forzoso concluir que tal prueba no es prueba que demuestre, o que tienda a demostrar, la inocencia de la acusada. Tampoco constituye prueba que hubiera producido un veredicto distinto —al emitido unánimemente en este caso— ni, mucho menos, socavado la confianza en el resultado. Además, contrario a lo que señaló el foro apelativo intermedio en cuanto al hecho de que el Informe de Análisis de Escena nunca fue entregado al Ministerio Público y que de los informes restantes "no se

desprende que la señora Torres era considerada como sospechosa de haber cometido algún delito", debemos concluir lo siguiente: el hecho de que en este caso no se mencionara a la señora Torres Feliciano en los referidos informes estadísticos o médicos no constituye prueba exculpatoria en lo absoluto. Debe recordarse que la prueba exculpatoria es aquella que, además de ser favorable al acusado, posee relevancia en cuanto a los aspectos de culpabilidad y castigo, *irrespectivamente de la buena o mala fe exhibida por el Ministerio Fiscal*. Es decir, se trata de una prueba que con razonable probabilidad habría alterado el veredicto o castigo.

Como pocas veces ocurre, *hubo un veredicto unánime* de un Jurado que dio el valor probatorio necesario para concluir que la señora Torres Feliciano participó como coautora en el asesinato del Sr. Nelson Figueroa Feliciano. Ello, luego de haber ponderado toda la prueba presentada en el juicio original, incluso los testimonios prestados por los testigos presenciales —entre ellos, familiares de la recurrida— que declararon haber visto a la recurrida sacar una cuchilla de la parte de atrás del bolsillo de su pantalón y dársela al señor Quirindongo, quien luego la utilizó para agredir y matar a la víctima.

Por último, es importante enfatizar que al revisar cuestiones de hecho en condenas criminales, este Tribunal ha expresado en reiteradas ocasiones que "la apreciación de la prueba corresponde, en primera instancia, al foro sentenciador y por lo cual los tribunales apelativos sólo intervendr[án] con dicha apreciación cuando se demuestre la existencia de pasión, prejuicio, parcialidad o error manifiesto".[16] La razón está en el hecho de que los foros primarios están en mejor posición para evaluar la prueba desfilada, ya que tienen la oportunidad de observar y escu-

---

[16] *Pueblo v. Irizarry*, 156 DPR 780, 788–789 (2002). Véanse, además: *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000); *Pueblo v. Maisonave Rodríguez*, 129 DPR 49, 62–63 (1991).

72

char a los testigos; por ello, su apreciación merece gran respeto y deferencia.[17] Consecuentemente, las determinaciones que hace el juzgador de los hechos —en este caso el Jurado— no deben descartarse arbitrariamente ni sustituirse por el criterio del foro apelativo, a menos que de la prueba admitida surja que no existe base suficiente para apoyar tal determinación.[18] Actuar contrario a ello y emitir decisiones judiciales que sustituyan arbitrariamente un fallo y veredicto emitido unánimemente en primera instancia es una práctica peligrosa que no tan solo trastoca la esencia misma de nuestra función como tribunales revisores, sino que desafortunadamente laceran la confianza del pueblo en su sistema de justicia. Por todo lo anterior, disiento y hago constar que hubiese expedido el presente caso para revocar el dictamen recurrido.

[17] *Pueblo v. Rosario Reyes,* 138 DPR 591, 598 (1995); *Pueblo v. Cabán Torres,* 117 DPR 645, 653–654 (1986).

[18] *Pueblo v. Maisonave Rodríguez,* supra, pág. 62.