EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>    Peticionario<br><br>          v.<br><br> Ashley M. Torres Feliciano<br><br>    Recurrida | Certiorari<br><br>2016 TSPR 163<br><br> 196 DPR ____ |

Número del Caso: CC-2016-55


Fecha: 12 de julio de 2016


Tribunal de Apelaciones:

        Región Judicial de Ponce, Panel VIII


 Oficina de la Procuradora General:

        Lcda. Margarita Mercado Echegaray
        Procuradora General

        Lcda. Karla Pacheco Alvarado
        Subprocuradora General

        Lcda. Mónica Cordero Vázquez
        Subprocuradora General, Interina

        Lcda. Daphne M. Cordero Guilloty
        Procuradora General Auxiliar


 Abogadas de la Parte Recurrida:

        Lcda. Lillianette Cortés Soto
        Lcda. Fabiana Tapia Pimentel


Materia: Sentencia del Tribunal con opinión disidente.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

      Peticionario

      v.

Ashley M. Torres Feliciano

      Recurrido

*Certiorari*

CC-2016-0055

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de julio de 2016.

El 22 de enero de 2016 el Estado Libre Asociado de Puerto Rico presentó un recurso de *certiorari* ante este Tribunal mediante el cual solicitó la revisión de la sentencia emitida por el Tribunal de Apelaciones el 23 de diciembre de 2015 en el caso El Pueblo de Puerto Rico v. Ashley Marie Torres Feliciano, KLCE2014-0162. En ésta, el Foro Apelativo Intermedio revocó la determinación del Tribunal de Primera Instancia y ordenó la celebración de un nuevo juicio. Luego de considerar el recurso peticionado, los Jueces y Juezas de este Tribunal se encuentran **igualmente dividios** en cuanto a su expedición. Por lo tanto,

y conforme a la Regla 4, inciso (a), del Reglamento de este Tribunal Supremo,[1] se expide el referido recurso y se confirma el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Rivera García emitió una Opinión disidente a la cual se unieron la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Feliberti Cintrón. La Jueza Presidenta Oronoz Rodríguez disiente sin opinión escrita.


Sonnya Isabel Ramos Zeno
Secretaria del Tribunal Supremo Interina

---

[1] 4 LPRA Ap. XXI-A.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

      Peticionario

          v.

Ashley M. Torres Feliciano

      Recurrida

*Certiorari*

CC-2016-0055

**Opinión Disidente emitida por el Juez Asociado señor RIVERA GARCÍA a la cual se une la Jueza Asociada señora PABÓN CHARNECO y el Juez Asociado señor FELIBERTI CINTRÓN.**

En San Juan Puerto Rico, a 12 de julio de 2016.

En lo que parece ser una práctica judicial preocupante y en crecimiento, nuevamente tenemos ante nuestra consideración un caso en el que el Tribunal de Apelaciones revoca un veredicto de un Jurado y ordena la celebración de un nuevo juicio. Lo que es peor, en esta ocasión se trata de la revocación de un veredicto **unánime** - atípico en nuestra jurisdicción - en un caso de asesinato en primer grado y cuya revocación **no** encuentra sustento alguno en el expediente. Revocar a nivel apelativo la apreciación de doce personas por el simple hecho de que se catalogue como prueba

exculpatoria un Informe de Escena del cual no surge el nombre de la sospechosa, y eventual convicta, no tan solo representa un craso error en derecho, sino que demuestra un claro desconocimiento de materias básicas en el manejo de escenas criminales. Ello, de por sí, debió ser suficiente para mover a este Tribunal a expedir el recurso y evaluar los méritos del caso con detenimiento. Hoy, lamentablemente, el curso de acción es otro, ya que los miembros de este Foro nos encontramos igualmente divididos, por lo que procede expedir el caso de epígrafe y confirmar el dictamen **patentemente erróneo** emitido por el Tribunal de Apelaciones. Ante ello, no me resta más que disentir.

A continuación, explico en detalle mi postura sobre el caso y expondré las razones por las cuales debió expedirse el recurso de *Certiorari* presentado por la Procuradora General con el objetivo de revocar el dictamen recurrido. Como explicaré, los planteamientos levantados por la defensa no brindan espacio alguno para concluir en el presente caso que hay evidencia nueva que pueda variar el veredicto y mucho menos brinda espacio para concluir que estamos ante evidencia exculpatoria.

## I

Por hechos ocurridos el 21 de febrero de 2009, un Jurado encontró culpable de forma unánime a Ashley M. Torres Feliciano (señora Torres Feliciano) por los delitos

de asesinato (Art. 106 del Código Penal de 2004)[2] y portación y uso de armas blancas (Art. 5.05 de la Ley de Armas).[3] La prueba de cargo consistió en el testimonio de los siguientes testigos: el agente Concepción Santiago, Abdón López, Francisco Colón, Zulayka Rivera, Luis Rodríguez Cruz, Abimael Figueroa, Lissette Colón, Lesly Figueroa Feliciano, Giselle Figueroa Feliciano, el patólogo Carlos Chávez y la madre de la recurrida, la señora Lucrecia Feliciano. El Ministerio Público aunque anunció como testigos de cargo a los agentes René Rodríguez (agente Rodríguez) y Brunilda Borrero (agente Borrero) decidió no utilizarlos durante el juicio. Siendo así, surge de los autos del caso que el tribunal decretó un receso en la Sala para que el abogado de defensa los examinara a ambos. Luego del receso, la defensa indicó al Tribunal que tuvo oportunidad de entrevistar a los testigos y no le interesaba interrogar los mismos. Desfilada la prueba, el Jurado de forma unánime emitió un veredicto de culpabilidad de los delitos según imputados. En consecuencia, el Tribunal de Primera Instancia sentenció a la recurrida a una pena de reclusión de ciento once (111) años de cárcel.

Inconforme con la determinación del foro primario, la convicta solicitó reconsideración, pero esta fue denegada. Oportunamente, la señora Torres Feliciano presentó una

---

[2] Art. 106 de la Ley Núm. 149-2004, según enmendada, conocida como Código Penal del Estado Libre Asociado de Puerto Rico, 33 LPRA sec. 4734 (2010).
[3] Art. 5.01 de la Ley Núm. 404 de 11 de septiembre de 2000, según enmendada, conocida como "Ley de Armas de Puerto Rico", 25 LPRA sec. 458d.

solicitud de nuevo juicio la cual fue denegada. En desacuerdo aún, la recurrida presentó un recurso de *Certiorari* ante el Tribunal de Apelaciones. En este alegó que se violentaron sus derechos constitucionales a tener un debido proceso de ley y un juicio justo al omitir la entrega de prueba exculpatoria. Específicamente, adujo que la defensa no tuvo oportunidad de examinar el Informe de Escena preparado por el agente investigador Rodríguez, al que tuvo acceso por primera vez durante la celebración de la Vista Evidenciaria en la que el agente admitió que él no había entregado el informe.[4] Sostuvo que el Informe constituye prueba exculpatoria toda vez que no menciona a la recurrida como sospechosa o participante de conducta delictiva alguna.

Evaluados los argumentos de las partes, el 23 de diciembre de 2015 el foro apelativo intermedio emitió una Sentencia en la que revocó el veredicto condenatorio unánime y ordenó la celebración de un nuevo juicio. Esto porque, entendió el Tribunal de Primera Instancia descartó los testimonios de los agentes Rodríguez y Borrero así como el testimonio de la Dra. Sylvette Lugo (doctora Lugo). En esencia, el planteamiento de la señora Torres Feliciano es que de los testimonios de los testigos no se desprende que la recurrida fuera considerada sospechosa sino perjudicada. De esta manera, determinó que procedía celebrarse un nuevo juicio.

---

[4] Apéndice, Petición de *Certiorari*, págs. 15-17.

En desacuerdo con este dictamen, el Estado recurre ante nos mediante un recurso de *Certiorari*. En este adujo los siguientes señalamientos de error:

> Erró el Tribunal de Apelaciones al expedir el auto de *certiorari* solicitado por la señora Ashley Torres Feliciano y ordenar la celebración de un nuevo juicio.

> Erró el Tribunal de Apelaciones al concluir, que las dos hojas que se anejaron al informe médico preparado por la Dra. Sylvette Lugo y las notas de la agente Brunilda Borrero sobre su intervención en este caso, constituyen evidencia nueva y creíble que produciría un resultado diferente.

> Erró el Tribunal de Apelaciones al concluir que el Informe de Análisis de Escena es evidencia exculpatoria que fue suprimida por el Ministerio Fiscal y que, de haber estado disponible al momento del juicio, hubiera arrojado una luz diferente en el juicio al punto de socavar la confianza en su resultado.

En su escrito la Procuradora General sostuvo que el Tribunal de Apelaciones incidió al revocar la sentencia condenatoria emitida por el foro de instancia, a base de una aplicación incorrecta de Pueblo v. Velázquez Colón, 174 DPR 304 (2008), sin tomar en cuenta la totalidad de la prueba presentada durante el juicio. Por su parte, la peticionaria presentó un escrito titulado *Memorando de oposición a la expedición de Certiorari* en el cual, en esencia, repitió los mismos argumentos esbozados ante los foros recurridos.

## II

Las Reglas de Procedimiento Criminal regulan la concesión de un nuevo juicio bajo el supuesto del

descubrimiento de nueva prueba en las Reglas 188 y 192.[5] El factor determinante en cuanto a la aplicación de una u otra regla radica en el momento en que se descubre la prueba nueva. La primera regula la concesión de un nuevo juicio antes de que se dicte sentencia y la segunda, después de dictarse la misma.

En Pueblo v. Marcano Parilla (II), 168 DPR 721 (2006) establecimos los requisitos que el promovente debe cumplir para que proceda el nuevo juicio solicitado. Sobre este particular dispusimos que los requisitos son: 1) se descubrió prueba nueva después del juicio; 2) que no pudo ser descubierta antes, a pesar de haber mediado razonable diligencia; 3) la nueva prueba es pertinente a la controversia y no meramente acumulativa o de impugnación; y 4) que sea probable que tenga un resultado distinto.[6] Al ponderar la prueba nueva el Tribunal deberá evaluar la nueva prueba junto a la prueba presentada en el juicio original de la forma más favorable al fallo o veredicto de culpabilidad que se impugna.[7]

En consecuencia, para satisfacer el *quantum* de prueba se requiere que la nueva evidencia junto con la prueba presentada en el juicio original sea de tal magnitud que, de haber sido presentada en el juicio, hubiera creado duda razonable en el ánimo del juzgador en cuanto a la

---

[5] 34 LPRA Ap. II, Rs. 188 y 192.
[6] Pueblo v. Velázquez Colón, 174 DPR 304, 327 (2008); Pueblo v. Marcano Parrilla (II), 168 DPR 721, 738 (2006).
[7] Íd., págs. 739-740.

culpabilidad del convicto.[8] Conforme a lo anterior, no se puede conceder un nuevo juicio si la prueba nueva es increíble y meramente acumulativa ya que probablemente no cambiaría el resultado del juicio, pues "se habría presentado evidencia de naturaleza y valor probatorio similar".[9]

Como parte de la garantía constitucional que tiene todo acusado a preparar adecuadamente su defensa, se reconoce como derecho fundamental el derecho a obtener mediante descubrimiento de prueba, evidencia que pueda favorecerle. Por esta razón, se ha resuelto que el derecho al descubrimiento de prueba es consustancial con el derecho de todo acusado a defenderse en un proceso criminal en su contra. Es por ello que el Ministerio Público está obligado constitucionalmente a descubrir, oportunamente, toda evidencia favorable que esté en manos del Gobierno, entre ella la prueba exculpatoria que esté en su poder.[10] La entrega inoportuna constituye una supresión si el acusado no tiene oportunidad de utilizarla efectivamente. Así, en _Pueblo v. Velázquez Colón_, supra, establecimos que la omisión o supresión de evidencia que incide en asuntos de inocencia o culpabilidad lesiona el debido proceso de ley

---

[8] Véanse, _Pueblo v. Velázquez Colón_, supra, pág. 327, citando a _Pueblo v. Marcano Parrilla (II)_, supra, pág. 740.
[9] _Pueblo v. Rodríguez_, 2015 TSPR 139, 193 DPR __ (2015).
[10] En este sentido, la obligación del Estado de presentar evidencia exculpatoria o de impugnación de la prueba principal de cargo, no parte del derecho estatutario a descubrir prueba favorable, sino del derecho constitucional al debido proceso de ley y del derecho de enfrentar la prueba adversa.

de un acusado por lo que procede revocar la convicción y ordenar la celebración de un nuevo juicio.[11]

Ahora bien, es importante delinear los contornos de lo que es la prueba exculpatoria. A tales efectos, hemos señalado que la prueba exculpatoria es "toda aquella que resulta favorable al acusado y que posee relevancia en cuanto a los aspectos de culpabilidad y castigo, irrespectivamente de la buena o mala fe exhibida por el Ministerio Fiscal".[12] La relevancia de la prueba que se presente estará condicionada a la impresión que el foro recurrido tenga sobre dicha prueba sobre el hecho de que existe una razonable probabilidad de que ésta habría alterado el veredicto o el castigo impuesto.[13] Es decir si para éste la prueba constituye una prueba exculpatoria suprimida, que con una razonable probabilidad habría alterado el veredicto o el castigo impuesto de haber sido presentada al juzgador de los hechos.

De ser ese el caso, al evaluar la moción de nuevo juicio no se considerarán los requisitos estatutarios y jurisprudenciales aplicables a las mociones ordinarias de un nuevo juicio. Ello, toda vez que el derecho a un debido proceso de ley, el derecho a obtener evidencia favorable y el derecho a enfrentar la prueba del Estado son de mayor

---

[11] Íd.

[12] Pueblo v. Echevarría Rodríguez I, 128 DPR 299 (1991), citando a Brady v. Maryland, supra, págs. 87-88; Moore v. Illinois, 408 U.S. 786, 794-795 (1972); Pueblo v. Hernández Santana, 138 DPR 577 (1995).

[13] Pueblo v. Echevarría Rodríguez I, supra, pág. 333, citando a United States v. Bagley, 473 U.S. 667, 674-675 (1985); United States v. Agurs, 427 U.S. 97, 104 (1976); U.S. v. Andersson, 813 F.2d 1450, 1458-1459 (9no Cir. 1987); United States v. Polizzi, 801 F.2d 1543, 1553 (9no Cir. 1986).

jerarquía y tienen una mayor protección con relación a las Reglas de Procedimiento Criminal.[14] Si la evidencia entregada inoportunamente es impugnatoria, el acusado debe demostrar que no tuvo oportunidad de contrainterrogar al testigo en cuanto al hecho que establece la prueba que le fue entregada tarde.[15] Cabe resaltar, que el estándar de pertinencia se cumple cuando el acusado demuestra que la evidencia suprimida puede razonablemente arrojar una luz diferente sobre el juicio al punto de socavar la confianza en el resultado.[16]

### III

Ciertamente, el presente caso requiere determinar si la alegada prueba nueva, en efecto, es prueba exculpatoria que incide en aspectos de culpabilidad o inocencia y si la misma hubiera producido un resultado distinto o al menos socavado la confianza en el resultado; o si por el contrario, se trata de prueba acumulativa o de impugnación o que pudo haberse descubierto mediando una razonable diligencia. Como veremos y conforme las expresiones transcritas en la Sentencia del Tribunal de Apelaciones, no cabe duda de que la evidencia "suprimida" por el Estado, no constituye "evidencia exculpatoria" porque si bien es cierto que no la involucra directamente con el acto delictivo, no es menos cierto que la misma no habría alterado el veredicto o el castigo impuesto de haber sido

---

[14] Pueblo v. Velázquez Colón, supra, pág. 329.
[15] Íd.
[16] Íd.; Brady v. Maryland, 373 US 83 (1963).

presentada al juzgador de los hechos. En otras palabras no es una prueba de tal magnitud que hubiese creado la duda razonable en el ánimo del juzgador en cuanto a su no culpabilidad por los hechos imputados. Veamos.

La alegada prueba exculpatoria presentada por la señora Torres Feliciano consistió en la siguiente prueba documental: las notas de la agente Brunilda Borrero, el Informe de Análisis de Escena suscrito por el agente Rodríguez, dos hojas del expediente médico levantado en el CDT preparadas por la doctora Lugo; y en el testimonio de su entonces pareja y padre de su hija, el convicto y autor principal del crimen, el señor Quirindongo. La recurrida alegó que de cada uno de los informes se desprende que la víctima señaló únicamente a éste último como su agresor. Adujo que ninguna de las personas entrevistadas la noche de los hechos, incluyendo a la víctima y su agresor, involucró a la señora Torres Feliciano como partícipe o coautora de los hechos ocurridos el 21 de febrero de 2009. Sostuvo que como la prueba no la vincula a los actos delictivos ello demuestra que el señor Quirindongo había actuado solo. Concluyó que la referida prueba documental es evidencia exculpatoria toda vez que fue prueba suprimida por el Estado que nunca se le entregó a la defensa.

Resulta improcedente el reclamo de la recurrida a los efectos de que dicha prueba constituye prueba exculpatoria. Luego de evaluar detenidamente el expediente; examinar la transcripción de los interrogatorios efectuados a los

agentes Borrero y Rodríguez y la doctora Lugo; y escuchar la regrabación del juicio original es forzoso concluir que tal prueba no es prueba que demuestre, o tienda a demostrar, la inocencia de la acusada. Tampoco constituye prueba que hubiera producido un veredicto distinto —al emitido de forma unánime en este caso— ni mucho menos socavado la confianza en el resultado. Además, contrario a lo que señaló el foro apelativo intermedio, en cuanto al hecho de que el Informe de Análisis de Escena nunca fue entregado al Ministerio Público y que de los informes restantes "no se desprende que la señora Torres era considerada sospechosa de haber cometido delito…", debemos concluir lo siguiente: el hecho de que en este caso no se mencionara a la señora Torres Feliciano en los referidos informes estadísticos o médicos no constituye en lo absoluto prueba exculpatoria. Debe recordarse que la prueba exculpatoria es aquella que además de ser favorable al acusado es una que posee relevancia en cuanto a los aspectos de culpabilidad y castigo, **irrespectivamente de la buena o mala fe exhibida por el Ministerio Fiscal**. Es decir, una prueba que con razonable probabilidad habría alterado el veredicto o el castigo.

Cabe resaltar que, como pocas veces ocurre, **hubo un veredicto unánime** de un Jurado que dio el valor probatorio necesario para concluir que la señora Torres Feliciano participó como coautora en el asesinato del Sr. Nelson Figueroa Feliciano. Ello, luego de haber ponderado toda la

prueba presentada en el juicio original incluyendo los testimonios prestados por los testigos presenciales, entre ellos familiares de la recurrida, que declararon haber visto a la recurrida sacar una cuchilla de la parte de atrás del bolsillo de su pantalón y dársela al señor Quirindongo, quien luego la utilizó para agredir y dar muerte a la víctima.

Por último, es importante enfatizar que al revisar cuestiones de hecho en convicciones criminales, este Tribunal ha expresado en reiteradas ocasiones que "la apreciación de la prueba corresponde al foro sentenciador y los tribunales apelativos sólo intervendrán con ella cuando exista error manifiesto, pasión, prejuicio o parcialidad".[17] La razón está en el hecho de que los foros primarios están en mejor posición para evaluar la prueba desfilada, ya que tienen la oportunidad de observar y escuchar a los testigos y, por ello, su apreciación merece gran respeto y deferencia.[18] Por lo tanto, las determinaciones que hace el juzgador de los hechos –en este caso el Jurado– no deben ser descartadas arbitrariamente ni tampoco deben sustituirse por el criterio del foro apelativo, a menos que de la prueba admitida surja que no existe base suficiente que apoye tal determinación.[19] Actuar contrario a ello y emitir decisiones judiciales que

---

[17] Pueblo v. Irizarry, 156 DPR 780, 788-789 (2002). Véase, además, Pueblo v. Acevedo Estrada, 150 DPR 84, 99 (2000); Pueblo v. Maisonave Rodríguez, 129 DPR 49, 62-63 (1991).
[18] Id; Pueblo v. Rosario Reyes, 138 DPR 591, 598 (1995); Pueblo v. Cabán Torres, 117 DPR 645, 653-654 (1986).
[19] Pueblo v. Maisonave Rodríguez, supra, pág. 62.

sustituyen arbitrariamente un fallo y veredicto unánimemente emitido en primera instancia es una práctica peligrosa que no tan solo trastoca la esencia misma de nuestra función como tribunales revisores, sino que desafortunadamente laceran la confianza del pueblo en su sistema de justicia. Por todo lo anterior, disiento y hago constar que hubiese expedido el presente caso para revocar el dictamen recurrido.


Edgardo Rivera García
Juez Asociado