ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>LUIS J. SOTO SOTO<br><br>Apelante | KLAN202300802 | Apelación procedente del Tribunal de Primera Instancia, Sala de Fajardo<br><br>Criminal Núm.: N1CR202200017<br><br>Sobre: Art. 241. A MENOS GRAVE(2012) |

Panel integrado por su presidente, el juez Figueroa Cabán, el juez Bonilla Ortiz y la jueza Mateu Meléndez

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico a 30 de noviembre de 2023.

Comparece el señor Luis J. Soto Soto, en adelante el señor Soto o el apelante, y solicita que revisemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de Fajardo, en adelante TPI. Mediante la misma, el TPI declaró no ha lugar la solicitud de desestimación de la demanda por falta de jurisdicción e interpretó que los elementos del delito de alteración a la paz quedaron probados más allá de duda razonable.

Por los fundamentos que expondremos a continuación, se confirma la sentencia apelada.

**-I-**

Surge de los autos originales del caso de epígrafe que al señor Soto le formularon una *Denuncia* por violación al Art. 241 del Código Penal de 2012, en los siguientes términos:

Número Identificador

RES2300_____

El referido(a) acusado(a) Luis Javier Soto Soto, allá o en para el 19 de febrero de 2022 en el lugar, fecha y hora antes mencionados que forma parte de la jurisdicción del Tribunal de Primera Instancia Sala de Fajardo ilegal, voluntaria, maliciosa y criminalmente, profirió lenguaje. Este incurrió en Alteración a la Paz Código Penal 2.41 alega la señora YASHIRA QUILES CARRASQUILLO, por este proferir palabras soeces a la víctima por esta negarle la entrada tales como: Que vas hacer pendeja, cabrona, te crees que por tener el culo ese grande y grasoso no voy a entrar, trapo de postmaster tírale foto al bicho mío que con lo grande y grasoso yo no llego allá dentro jodía pendeja.[1]

Luego de varios trámites procesales que resulta innecesario pormenorizar para la resolución de la controversia, el TPI determinó causa y celebró el juicio en su fondo.[2]

Examinada la prueba documental y testifical, el TPI dispuso lo siguiente:

A la solicitud de desestimación de la defensa por falta de jurisdicción, habiéndose resuelto este asunto en la Resolución emitida por este Tribunal el 13 de marzo de 2023 la cual advino final y firme, y conforme a lo resuelto por el Tribunal Supremo de los Estados Unidos en torno a que la mera titularidad de determinados terrenos por el gobierno de Estados Unidos no excluye automáticamente la jurisdicción del Estado en donde éstos se encuentren sitos, se dispone **No Ha Lugar**.

Habiendo el Tribunal examinado los exhibits presentados por ambas partes y escuchado bajo juramento a los testigos de cargo; Yashira Quiles, Mayra Parrilla, Herminio Rivera, y al Agente Ronnie Díaz, así como los testigos de defensa; Luis Norat, Gabriel Medina y Angelis Colondres, se entiende que el Ministerio Público probó el caso más allá de duda razonable y por consiguiente declara al acusado **LUIS JAVIER SOTO SOTO culpable** del delito imputado…[3]

En desacuerdo, el apelante presentó una *Solicitud de Reconsideración o Nuevo Juicio bajo las Reglas 185, 188(c), 192.1, 193 y 194 de Procedimiento Criminal*,[4] a la cual el Ministerio Público se opuso[5].

---

[1] Autos originales, *Denuncia*.
[2] Apéndice del apelante, págs. 1-2.
[3] *Id.* (Énfasis en el original).
[4] *Id.*, págs. 3-20.
[5] *Id.*, págs. 21-23.

Con el beneficio de la comparecencia de ambas partes, el TPI declaró No Ha Lugar la solicitud del señor Soto y en lo pertinente determinó:

> Conforme al testimonio vertido en el juicio por la testigo victima [*sic*.] Sra. Yashira Quiles Carrasquillo, el convicto le propinó palabras soeces, insultantes, y llevo [*sic*.] a cabo una conducta ofensiva contra esta perturbando su paz y tranquilidad. Este comportamiento pudo, y en efecto provocó, una reacción violenta o airada por parte de ella, afectándose también su derecho a la intimidad. A dicho testimonio el Tribunal le otorgó entera credibilidad. Además, el mismo fue corroborado por el resto de la prueba de cargo.[6]

Además, el foro sentenciador anejó como nota al calce las expresiones que atribuyó al apelante, a saber: "que [*sic*.] vas a hacer pendeja, cabrona, te crees que por tener el culo ese grande y grasoso no voy a entrar, trapo de postmaster. El bicho mío no llega adentro de tu culo con lo grande y grasoso que es".[7]

Insatisfecho con dicha determinación, el señor Soto presentó una *Apelación* en la que alega que el TPI incurrió en los siguientes errores:

> ERRÓ EL HONORABLE TPI AL DETERMINAR QUE POSEÍA JURISDICCIÓN DENTRO DE UN ENCLAVE FEDERAL.
>
> ERRÓ EL HONORABLE TPI AL DETERMINAR QUE POSEÍA JURISDICCIÓN SOBRE LA MATERIA PARA ADJUDICAR UN ASUNTO OBRERO PATRONAL FEDERAL BAJO UNA LEGISLACIÓN PENAL ESTATAL.
>
> ERRÓ EL TPI AL DETERMINAR QUE SE CONFIGURARON TODOS LOS ELEMENTOS DEL DELITO Y QUE FUE PROBADO MÁS ALLÁ DE TODA DUDA RAZONABLE Y FUNDADA SEGÚN GARANTIZAN LAS ENMIENDAS DE LA CONSTITUCIÓN DE LOS ESTADOS UNIDOS Y LA CARTA DE DERECHOS DE LA CONSTITUCIÓN DEL ESTADO LIBRE ASOCIADO.

Posteriormente, este Tribunal Intermedio aceptó como prueba oral del apelante la *Exposición Narrativa sobre Fragmento del Testimonio de la Testigo Yashira Quiles Carrasquillo*, en adelante la señora Quiles,

---

[6] *Id.*, págs. 25 y 27b.
[7] *Id.*

reservándose adjudicarle el valor probatorio que estimara pertinente. Luego ordenó al apelado presentar su alegato.

Examinados los escritos de las partes, los autos originales, el expediente y la prueba documental, estamos en posición de resolver.

**-II-**

**A.**

Un derecho constitucional fundamental de todo acusado es la presunción de inocencia.[8] Como piedra angular del procedimiento criminal, esta opera como guardián de los otros derechos fundamentales del acusado y como principio rector para el ejercicio del poder público.[9] La presunción de inocencia clama que "toda convicción siempre esté sostenida por prueba que establezca más allá de duda razonable todos los elementos del delito y la conexión del acusado con los mismos".[10] En defensa de ello, la Regla 110 de Procedimiento Criminal dispone que el acusado criminalmente se presume inocente, mientras no se pruebe lo contrario.[11] Además, de existir duda razonable sobre su culpabilidad, se le absolverá.[12] Corresponde al Ministerio Público probar la culpabilidad del acusado de acuerdo a ese estándar.[13]

El estándar probatorio de "más allá de duda razonable" implica que la prueba presentada por el ministerio público debe producir en el juzgador una certeza moral sobre la concurrencia de todos los

---

[8] Art. II, Sec. 11, Const. ELA.
[9] *Sánchez v. González*, 78 DPR 849, 856 (1955).
[10] *Pueblo v. Bigio Pastrana*, 116 DPR 748, 760-761 (1985).
[11] Regla 110 de Procedimiento Criminal (34 LPRA Ap. II).
[12] *Id.*
[13] *Id.*

elementos del delito y la conexión del imputado con la realización de estos.[14] Conviene añadir que, esta prueba debe ser suficiente para producir dicha certeza en una conciencia exenta de preocupaciones o en un ánimo no prevenido.[15]

Lo opuesto, es decir, la insatisfacción del juzgador con la prueba, es lo que se conoce como duda razonable.[16] Esto no significa que toda duda posible, especulativa o imaginaria tenga que ser atendida o descartada para adjudicar la culpabilidad del acusado, si no que la prueba convenza al dirigir la inteligencia y satisfacer la razón.[17]

**B.**

El artículo 241 del Código Penal de Puerto Rico de 2012 dispone en lo pertinente:

> Incurrirá en delito menos grave, toda persona que realice cualquiera de los siguientes actos:
>
> (a) perturbe la paz o tranquilidad de una o varias personas con conducta ofensiva que afecte el derecho a la intimidad en su hogar, o en cualquier otro lugar donde tenga una expectativa razonable de intimidad;
>
> (b) perturbe la paz o tranquilidad de una o varias personas mediante palabras o expresiones ofensivas o insultantes al proferirlas en un lugar donde quien las oye tiene una expectativa razonable de intimidad; o
>
> (c) perturbe la paz o tranquilidad de una o varias personas en forma estrepitosa o inconveniente mediante vituperios, oprobios, desafíos, provocaciones, palabras insultantes o actos que puedan provocar una reacción violenta o airada en quien las escucha.

Las primeras dos modalidades del delito de alteración a la paz criminalizan aquella conducta que perturbe la paz a una o varias personas en función del

---

[14] *Pueblo v. Colón, Castillo*, 140 DPR 564, 581-582 (1996).
[15] *Pueblo v. Cabán Torres*, 117 DPR 645, 652 (1986).
[16] *Pueblo v. Rodríguez Román*, 128 DPR 121, 131 (1991).
[17] *Pueblo v. Pagán, Ortiz*, 130 DPR 470, 480 (1992).

lugar en donde se lleve a cabo la acción punible.[18] De modo, que las expresiones de una persona únicamente podrán configurar la modalidad del delito cuando se profieren en el hogar o en un área en donde exista una expectativa razonable de intimidad. Ello sujeta estas modalidades del delito a condiciones de tiempo, lugar y manera de la expresión.[19] En cambio, el inciso (c) constituye una tercera modalidad, dirigida a penalizar determinadas expresiones que puedan ocasionar una reacción violenta o airada en la persona que las escucha.[20] Bajo este tercer supuesto, el énfasis recae en el contenido de la expresión, mediante el cual, como resultado de las palabras proferidas, la conducta del ofensor perturba la tranquilidad y paz de la víctima.[21]

Para que se configure el delito de alteración a la paz bajo el Art. 247 (c), *supra*, es necesario que concurran un elemento objetivo y otro subjetivo.[22] El elemento objetivo consiste en determinar si el lenguaje utilizado[23] es lo suficientemente ofensivo o insultante de modo que pueda ocasionar una reacción violenta inmediata en una persona de sensibilidad ordinaria. Esto se determina al evaluar el contexto y circunstancias en las que se realizó la expresión.[24] Bajo la categoría del lenguaje ofensivo se incluyen las palabras de riña que son "las que por el simple hecho de ser proferidas infligen daño o tienden a

---

[18] *Pueblo v. García Colón I*, 182 DPR 129, 146 (2011).
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*, pág. 157.
[23] Cabe destacar que el TSPR ha reconocido una modalidad de alteración a la paz que no requiere determinado uso de lenguaje prohibido, sino que se refiere a otros tipos de comportamiento ofensivo. *Pueblo v. Rodríguez Lugo,* 156 DPR 42, 50 (2002).
[24] *Pueblo v. García Colón I, supra.*

causar una inmediata alteración a la paz".[25] Conviene destacar, que para que se constituya este elemento objetivo del delito no es necesario que la víctima, en efecto, haya respondido al acto o manifestación con violencia.[26] Sin embargo, es indispensable que las manifestaciones hayan sido dirigidas a la persona que las escucha.[27]

En cambio, bajo el elemento subjetivo hay que determinar si la paz de la víctima fue, en efecto, perturbada.[28] Para ello, se requiere que la persona a quien iba dirigida la expresión se encuentre en paz previo a la conducta insultante.[29] Sobre este particular, el Tribunal Supremo de Puerto Rico, en adelante TSPR, ha declarado que "[l]a paz de algún individuo queda perturbada cuando la sensación de seguridad y tranquilidad que toda persona siente al amparo de la protección de la ley es invadida".[30] Este estado anímico de la víctima antes del incidente debe ser objeto de prueba, toda vez que si la persona no estaba en un estado de paz y tranquilidad previo al momento de la manifestación, no existe paz alguna que pueda alterarse.[31]

## C.

Como norma general, los tribunales estatales tienen jurisdicción para atender cualquier asunto al amparo de las leyes estatales y jurisdicción concurrente con los tribunales federales para atender

---

[25] *Pueblo v. Caro González*, 110 DPR 518, 525 (1980).
[26] *Pueblo v. García Colón I*, *supra*, págs. 157-158.
[27] *Id.*, pág. 158.
[28] *Id.*; *Pueblo v. Irizarry*, 156 DPR 780, 799-800 (2002).
[29] *Pueblo v. García Colón I*, *supra*, pág. 158; *Pueblo v. De León Martínez*, 132 DPR 746 (1993).
[30] *Pueblo v. Rodríguez Lugo*, *supra*, pág. 51.
[31] *Pueblo v. García Colón I*, *supra*, pág. 158.

los asuntos que surjan bajo las leyes federales.[32]

No obstante, el gobierno federal tiene jurisdicción exclusiva sobre los asuntos de derecho federal cuando el Congreso así lo dispone expresamente o cuando la intención clara de la ley es privar a los tribunales estatales de la autoridad sobre determinado asunto federal.[33] En cambio, cuando no hay legislación federal que atienda una controversia directamente, aplica la ley estatal si el Congreso no la ha desplazado.[34]

Por otra parte, la doctrina de ocupación del campo se ha desarrollado para evitar conflictos regulatorios y fomentar así una política uniforme.[35] De modo, que el Congreso puede ocupar el campo de un asunto federal y excluir la regulación local.[36] Cónsono con lo anterior, en *González v. Mayagüez Resort & Casino,* el TSPR resolvió:

> Los problemas jurisdiccionales bajo la doctrina de campo ocupado tienen dos aspectos, a saber, el legislativo y el adjudicativo. El concepto [de] jurisdicción legislativa versa sobre ["]quién tiene la facultad para regular, mediante legislación, determinada materia, hecho o situación. ... [L]a [']jurisdicción legislativa['] se refiere a [']qué ley aplica['] a determinada controversia .... Mientras que, por otro lado, la [']jurisdicción judicial['] se refiere a cuál tribunal (estatal o federal) está autorizado para atender en las controversias que se susciten dentro del enclave".[37]

---

[32] *MCS ADVANTAGE, INC. v. Fossas Blanco*, 2023 TSPR 8, resuelto el 25 de enero de 2023; *González v. Mayagüez Resort & Casino*, 176 DPR 848, 856 (2009); *Tafflin v. Levitt*, 493 US 455, 458-459 (1990).

[33] *MCS ADVANTAGE, INC. v. Fossas Blanco*, *supra*; *González v. Mayagüez Resort & Casino*, *supra*, pág. 856; *Rodríguez v. Overseas Military*, 160 DPR 270, 277-278 (2003).

[34] *Rodríguez v. Overseas Military*, *supra*, pág. 279; reiterado en *González v. Mayagüez Resort & Casino*, *supra*.

[35] *SLG Semidey Vázquez v. ASIFAL*, 177 DPR 657, 679-680 (2009); *González v. Mayagüez Resort & Casino*, *supra*, pág. 856; *Rivera v. Security Nat. Life Ins. Co.*, 106 DPR 517, 523 (1977).

[36] *González v. Mayagüez Resort & Casino*, *supra*, pág. 856; *English v. General Electric Co.*, 496 US 72, 78-79 (1990).

[37] *González v. Mayagüez Resort & Casino*, *supra*, pág. 857, *citando a Rodríguez v. Overseas Military*, *supra*, pág. 279 (citas omitidas).

En lo aquí pertinente, según resuelto por la Corte Suprema de Estados Unidos, la mera titularidad de determinados terrenos por el gobierno de Estados Unidos no excluye automáticamente la jurisdicción del Estado en donde estos se encuentren sitos.[38]

Por otro lado, es norma reiterada que "[l]a jurisdicción excepcional no se presume nunca. El que la alega debe probarla".[39]

**D.**

La apreciación de la prueba testifical corresponde, inicialmente, al Tribunal de Primera Instancia. Por eso, los tribunales apelativos intervendrán con la misma solo cuando se demuestre que el foro sentenciador incurrió en error manifiesto, pasión, prejuicio o parcialidad.[40] De modo, que las determinaciones de hecho del foro sentenciador no se deben sustituir por el criterio del Tribunal de Apelaciones, salvo que de la prueba surja que el primero no contó con base suficiente para establecer la culpabilidad del acusado más allá de duda razonable.[41]

Ahora bien, en casos penales, el tribunal intermedio revisará la aquilatación de la prueba del foro sentenciador, solamente cuando de su evaluación minuciosa surjan serias dudas, razonables y fundadas,

---

[38] *California Coastal Com'n v. Granite Rock Co.*, 480 US 572, 581 (1987); *Kleppe v. New México*, 426 US 529, 543-545 (1976); *Wilson v. Cook*, 327 US 474, 487-488 (1946). Véase, además, *Pueblo v. Suárez*, 51 DPR 903, 910 (1937).
[39] *Pueblo v. Suárez*, *supra*.
[40] *Gómez Márquez v. Periódico El Oriental Inc.*, 203 DPR 783, 8 (2020); *Pueblo v. Torres Feliciano*, 196 DPR 62, 71 (2016); *Pueblo v. De Jesús Mercado,* 188 DPR 467, 479 (2013); *Pueblo v. Irizarry*, *supra*, págs. 788-789; *Pueblo v. Roldán López*, 158 DPR 54, 61 (2002).
[41] *Pueblo v. Torres Feliciano*, *supra*, pág. 72; *Pueblo v. Maisonave Rodríguez*, 129 DPR 49, 63 (1991).

sobre la culpabilidad del acusado.[42] Así pues, ante la inconformidad que crea una duda razonable, los tribunales apelativos, aunque no están en la misma posición al apreciar la credibilidad de los testigos, tienen, al igual que los tribunales de instancia, no solo el derecho sino el deber de tener la conciencia tranquila y libre de preocupación.[43] En síntesis, como regla general, la apreciación de la prueba del foro sentenciador prevalecerá a menos, que a la luz de la totalidad de la evidencia, se desprendan dudas serias, razonables y fundadas sobre la culpabilidad del acusado.[44]

En fin, en casos penales los tribunales de apelaciones tienen la obligación de garantizar que la revisión de la sentencia impugnada refleje el balance más cuidadoso entre la deferencia a la aquilatación de la prueba del foro sentenciador y los derechos del acusado.[45]

### -III-

Para el apelante, el Congreso de los Estados Unidos ha concedido jurisdicción exclusiva a los edificios del correo, indistintamente de que la facilidad sea alquilada, comprada o expropiada. Cónsono con lo anterior, la seguridad de dichos enclaves ha sido asignada a un cuerpo especial identificado como "postal inspector" o "postal police". Por ende, el incumplimiento de la conducta en un edificio postal es de jurisdicción federal exclusiva. En consecuencia, quien reclame intervención

---

[42] *Pueblo v. Casillas, Torres*, 190 DPR 398, 417 (2014); *Pueblo v. Carrasquillo Carrasquillo*, 102 DPR 545, 551 (1974).
[43] *Pueblo v. Irizarry, supra*, pág. 790.
[44] *Pueblo v. Carrasquillo Carrasquillo, supra*, pág. 551.
[45] *Pueblo v. Acevedo Estrada,* 150 DPR 84, 98-99 (2000).

local o estatal en una facilidad del correo, tiene que probar la existencia previa del permiso.

Por otro lado, el señor Soto argumenta que la señora Quiles incurrió en una práctica ilícita patronal al impedir que se realizara una inspección en las facilidades de USPS en Luquillo. Como consecuencia de lo anterior, se terminó la paz laboral y la tranquilidad en el centro de trabajo. Bajo este supuesto, no se configuró uno de los elementos del delito de alteración a la paz, ya que la persona perjudicada no se encontraba en paz al momento del incidente con el apelante.

En cambio, el Ministerio Público aduce que conforme se expresó el Tribunal de Apelaciones, en el caso alfanuméricamente clasificado como KLAN202200550 2022 WL 16958645, los documentos que sometió el apelante no demuestran que el gobierno federal compró o expropió el edificio donde está situado el servicio postal de Luquillo, de forma tal que se pueda determinar la jurisdicción federal exclusiva.

En cuanto a los elementos del delito de alteración a la paz, el Ministerio Público insiste en haber probado más allá de duda razonable todos los elementos del delito. En todo caso, el apelante no nos puso en posición de evaluar y examinar la prueba oral vertida en el juicio.

Como cuestión de umbral, por sexta ocasión, reiteramos que el Tribunal General de Justicia tiene jurisdicción para atender el pleito de epígrafe. A esos efectos, coincidimos con el apelado en que el apelante no presentó prueba sobre la jurisdicción

exclusiva del foro federal sobre el inmueble en cuestión. Conviene destacar que la mera titularidad del Gobierno de los Estados Unidos sobre ciertos terrenos dentro de un Estado o Territorio no excluye la jurisdicción de estos sobre dichos inmuebles.

Finalmente, aunque alega que no se probaron todos los elementos del delito de alteración a la paz, el apelante no nos puso en posición de impugnar la apreciación de la prueba por parte del foro sentenciador, de modo que de los testimonios se hubiese desprendido alguna prueba que contradijera las firmes determinaciones de hecho y de derecho que apoyan la sentencia apelada.

Nuestra revisión independiente del expediente, específicamente: la *Exposición Narrativa sobre Fragmento del Testimonio de la Testigo Yashira Quiles Carrasquillo*, la prueba documental presentada por el apelado y por el apelante, y las grabaciones suministradas por ambas partes, no proporciona fundamento alguno para revocar la sentencia apelada.

En resumen, la evaluación cuidadosa de dichas piezas probatorias no ha creado dudas, razonables y fundadas, sobre la culpabilidad del acusado. Por consiguiente, en tanto el apelante no demostró que el TPI incurrió en error manifiesto, pasión, prejuicio o parcialidad, tampoco revocó la presunción de corrección del dictamen recurrido.

**-IV-**

Por los fundamentos antes expuestos, se confirma la sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


                              Lcda. Lilia M. Oquendo Solís
                         Secretaria del Tribunal de Apelaciones